# United States Court of Appeals
## For the First Circuit

No. 03-1471

ANGEL L. RIVERA-DOMENECH,

Plaintiff, Appellee,

v.

CALVESBERT LAW OFFICES PSC,

Intervening Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Justo Arenas, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lynch, Circuit Judge.

Paul E. Calvesbert, Enrique A. Báez, and Calvesbert Law
Offices PSC on brief for appellant.

March 29, 2005

**Per Curiam**.   This case involves the efforts by an attorney to convince a federal court to permit him to withdraw his appearance or at least require that his client pay him for his work in a trial.  Attorney Paul E. Calvesbert (or more accurately, his professional services corporation) represented Rivera-Domenech in an admiralty case in federal court between Angel L. Rivera-Domenech and Quality Boat Services (and other defendants).

**I.**

We describe the facts as alleged by attorney Calvesbert. In January 1998, Rivera-Domenech retained Calvesbert to represent him in the underlying admiralty action (for simplicity, we refer to the law firm and the lawyer collectively with the lawyer's name). In late February 1998, Calvesbert sent Rivera-Domenech a fee agreement, which Rivera-Domenech executed on March 2, 1998.  In April of 1998, Calvesbert filed a federal complaint for Rivera-Domenech against Quality Boat Services and other defendants, and then proceeded to pursue the admiralty action.  By October of 2000, the lawyer and the client were in the middle of a fee argument. According to Calvesbert, Rivera-Domenech by then owed him more than $10,000.

The bench trial before a magistrate judge started on October 16, 2001; the trial was then continued on October 17 until November 7, 2001.  A further series of reschedulings followed and trial was ultimately set for April 23, 2002.

On March 26, 2002, Calvesbert attempted to resolve the fee amount owed, now around $60,000, by proposing in a letter that Rivera-Domenech convert the representation agreement into a contingency fee arrangement. Calvesbert gave a deadline of April 1 to respond or Calvesbert would file a motion to withdraw his appearance in the case. On April 8, Rivera-Domenech responded. In his response, Rivera-Domenech attacked the integrity of his lawyer; no resolution was reached on the fees.

Calvesbert then moved to withdraw from representation for lack of payment and irreconcilable differences on April 10, 2002, and sought continuance of the April 23 trial date. Calvesbert did not then ask in the alternative for the court to order the payment of fees. On April 12, 2002, the magistrate judge denied the motion to withdraw, without hearing, commenting only that "[t]he trial will not be continued."

Calvesbert, on April 15, 2002, moved the court to reconsider the denial of his motion to withdraw on the ground of irreconcilable differences and argued that his fee agreement permitted him to withdraw. A copy of the fee agreement was attached and contained an arbitration provision:

> Any controversy, claim or dispute in the course and scope of the lawyer-client relationship or arising out of or relating to this Proposal or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate (hereinafter the "Dispute"), shall

be determined by arbitration in San Juan, Puerto Rico, before a sole arbitrator, in accordance with the laws and rules of professional conduct of the Commonwealth of Puerto Rico. "Disputes" shall include, without limitation, those involving fees, costs, billing, claims of professional negligence, malpractice and breach of ethical or fiduciary duties. The arbitration shall be administered by the American Arbitration Association (AAA) pursuant to its Commercial Arbitration Rules and Supplementary Procedures for Large, Complex Disputes. The arbitrator shall be a licensed attorney in Puerto Rico and a member of the AAA Panel of Arbitrators.

This motion was also denied "[n]otwithstanding the deterioration of the relationship between counsel and client." Calvesbert then filed an "Urgent Appeal From Magistrate Judge's Orders" pursuant to 28 U.S.C. § 636(b)(1)(A) and the Local Rules of the District of Puerto Rico. This "appeal" was an appeal to the district court from the order by the magistrate judge, but it was denied by the magistrate judge.[1] Calvesbert did not seek to file an interlocutory appeal to this court from the denial of the motion to withdraw. The result was that Calvesbert was effectively required

---

[1]We do not understand why this appeal was not ruled upon by the federal district judge, who was the proper decision maker for the appeal. See 28 U.S.C. § 636(b)(1)(A) ("A [district] judge of the court may reconsider any pretrial matter [decided by the magistrate]. . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). The motion also referred to what was then Rule 510 of the Local Rules of the District of Puerto Rico, which stated, "The [district] Judge to whom the case is assigned shall consider the appeal and shall set aside any portion of the Magistrate Judge Order found to be clearly erroneous or contrary to law." D.P.R.R. 510. In any event, this procedural problem was not raised on appeal before this court.

-4-

to continue to represent Rivera-Domenech, a hostile client, at trial without payment at the time. Bench trial before the magistrate judge was held on April 23, 25, and May 13, and the court, on its own motion, set further bench trial for six days in September 2002, starting with September 3.

Trying another tack, Calvesbert sought an order that he be paid reasonable fees because he was being forced to continue to represent Rivera-Domenech by the court. Calvesbert moved to intervene as a third-party plaintiff on June 17, 2002, against Rivera-Domenech, to assert his attorney's fees claim. Rivera-Domenech did not object. The magistrate judge allowed Calvesbert permissive intervention on June 20, 2002. On August 5, 2002, Calvesbert filed his first motion requesting an order from the court that his client pay him the sums claimed -- $82,641.94 -- as a corollary of the order denying his motion to withdraw. This was before trial recommenced in September. The court on August 27, 2002, denied that motion without comment.

After the bench trial ended on September 13, 2002, the court granted Calvesbert and Rivera-Domenech 20 days to meet and settle their fee differences, and if they failed, to let the court know so that a trial date for the intervenor claim for payment of fees could be set. It is unclear what amount in fees Calvesbert thought Rivera-Domenech owed at that point.

On October 23, 2002, Rivera-Domenech filed a pro se motion alerting the court to the arbitration clause in the original fee agreement. The court treated the motion as a motion for an order compelling arbitration of the fee dispute, ordered the parties to undergo arbitration, and dismissed Calvesbert's intervening claim for payment of fees without prejudice on December 30, 2002.

## II.

Calvesbert was ultimately unsuccessful in the attempt below to obtain the desired relief from the district court: payment of fees both from before and after the denial of the motion to withdraw his appearance. Calvesbert presents four arguments on appeal: 1) the district court erred by not allowing him to withdraw before commencement of or during trial; 2) the district court should have held a hearing on his motion to withdraw; 3) the district court should have conditioned Calvesbert's continued representation of Rivera-Domenech upon posting of adequate security by Rivera-Domenech to cover reasonable attorney's fees; and 4) the district court should not have sent the attorney's fee dispute to arbitration. The client, Rivera-Domenech, has not filed a reply on appeal.

We make a point clear at the start. At the time of the entry of the denial of the motion to withdraw, there was interlocutory jurisdiction to take an appeal to this court. See

-6-

<u>Fidelity Nat'l Title Ins. Co. of N.Y.</u> v. <u>Intercounty Nat'l Title Ins. Co.</u>, 310 F.3d 537, 539 (7th Cir. 2002); <u>Whiting</u> v. <u>Lacara</u>, 187 F.3d 317, 319-20 (2d Cir. 1999).  Calvesbert should have pursued the interlocutory appeal at the time of the denial of his motion to withdraw his appearance.[2]  In similar circumstances, circuit courts, including this one, have found the denial of a motion to withdraw to be an abuse of discretion.  <u>See, e.g.</u>, <u>Fidelity</u>, 310 F.3d at 540-41; <u>Lieberman</u> v. <u>Polytop Corp.</u>, 2 Fed. Appx. 37, 39-40 (1st Cir. 2001) (unpublished opinion).  In <u>Lieberman</u>, we reversed the district court's denial of a motion to withdraw and explained:

> It simply expects too much of counsel to expend the additional energy necessary to go to trial, and to front the necessary expenses, without any real assurance that he will be paid for any of it, especially where he already is owed a substantial sum and the client has violated the written fee agreement. Further, if counsel does not expend the necessary effort and does not front the trial expenses, he very well could expose himself to civil liability to his client. We refuse to place counsel in such a position.

---

[2]We do not suggest that Calvesbert waived his right to a final appeal by failing to file an interlocutory appeal, only that he has limited the relief available.  The general rule is that failure to take an interlocutory appeal does not automatically foreclose review after final judgment.  <u>See</u> 16 C. Wright et al., <u>Federal Practice and Procedure</u> § 3921, at 19 (2d ed. 1996) ("[F]ailure to take an available [interlocutory] appeal does not of itself waive the right to secure review, on appeal from final judgment, of matters that could have been appealed but were not.").

-7-

2 Fed. Appx. at 39-40. Here, in addition, it is plain there was an irretrievable breakdown between client and counsel, yet the court refused to allow Calvesbert to withdraw.

By not taking an interlocutory appeal, Calvesbert has effectively mooted any relief from the erroneous order denying his motion to withdraw. He has now represented the client through the trial. His claim that the district court should have held a hearing on the motion to withdraw is similarly moot.

Moreover, as for Calvesbert's claim that the district court should have conditioned his continued representation of Rivera-Domenech upon the client's posting of adequate security, he has waived the argument by not asking for such relief from the district court in the proceedings below. See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991).

That leaves Calvesbert's appeal from the order compelling arbitration and dismissing his claim for fees without prejudice. The only relief Calvesbert wants at this point is that the court, not the arbitrator, decide the fee issue. Whether the district court had ancillary jurisdiction to issue such an order is a nice question. Two members of this panel conclude it did; one concludes it did not. But we make no holding on the point.

Courts have rested the exercise of jurisdiction over fee disputes related to proceedings before them on the doctrine of

ancillary jurisdiction.[3]  See, e.g., Pay Tel. of Greater N.Y., Inc. v. Sheridan, 766 F.2d 92, 94 (2d Cir. 1985) (explaining that "in setting fees [due a withdrawing attorney] the district court is exercising ancillary jurisdiction"); Jenkins v. Weinshienk, 670 F.2d 915, 918 (10th Cir. 1982) (considering "the scope of a federal trial court's ancillary jurisdiction to adjudicate fee disputes").

A court's power to protect a lawyer against unfairness by his client in the context of a motion to withdraw seems to be an inherent power necessary to effectuate orderly judicial proceedings.  See, e.g., Fed. Sav. & Loan Ins. Corp. v. Ferrante, 364 F.3d 1037, 1041 (9th Cir. 2004) (surveying cases in which courts had jurisdiction to resolve "attorney fee disputes collateral to the underlying litigation").

But there are disagreements about the scope of that jurisdiction.  In Broughten v. Voss, 634 F.2d 880 (5th Cir. 1981), the court held that the district court had no ancillary jurisdiction, sua sponte, to make resolution of a fee dispute between a law firm and its client a condition precedent for granting the law firm's motion to withdraw.  Id. at 881-83.  As the outcome in Broughten illustrates, whether ancillary jurisdiction

---

[3]The Supreme Court has explained ancillary jurisdiction as a way "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994); see also 13B C. Wright et al., Federal Practice and Procedure § 3567.3, at 96 (Supp. 2004).

exists over this particular dispute is a question over which reasonable minds may disagree. However, the particular facts of this case make it unnecessary to resolve this question definitively.

Regardless of the jurisdictional issue, the resolution that Calvesbert must go through arbitration is correct. Calvesbert wanted the district court to resolve the fee dispute in his favor, but "the strong federal policy favoring arbitration agreements . . . requires us to resolve any doubts concerning arbitrability in favor of arbitration," Commercial Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 388 (1st Cir. 1993) (internal quotation marks omitted). Calvesbert had agreed in his original fee agreement to have an arbitrator decide the fee dispute, not the court. There is no unfairness: Calvesbert drafted the original fee agreement referring all disputes to arbitration. Nor did Rivera-Domenech waive his rights to demand arbitration.

We **dismiss** Calvesbert's appeal for lack of merit. No costs are awarded.