RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0380p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA and ILLINOIS
NATIONAL INSURANCE COMPANY,
            *Plaintiffs-Appellees,*

            *v.*

ALTICOR, INC., AMWAY CORPORATION, and
QUIXTAR, INC.,
            *Defendants-Appellants.*

No. 05-2479

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 05-00015—Richard A. Enslen, District Judge.

Decided and Filed: October 18, 2006

Before: GILMAN and GRIFFIN, Circuit Judges; GWIN, District Judge.[*]

---

## ORDER AND OPINION

---

GRIFFIN, Circuit Judge. Both plaintiffs-appellees, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and Illinois National Insurance Company (collectively "plaintiff National Union") are represented by the Michigan law firm of Plunkett & Cooney, P.C. ("Plunkett"). All three defendants-appellants, Alticor, Inc., Amway Corporation, and Quixtar, Inc., are represented by the Michigan law firm of Wilson Young PLC ("Wilson Young").

Attorney John Egan was employed by plaintiff National Union's law firm, Plunkett, from September 2003 until July 11, 2006. During that time, Egan represented this same plaintiff in this very case and in other insurance-related matters involving defendant Alticor. Specifically, Egan spent forty percent of his billable time representing plaintiff in insurance-coverage disputes against defendant Alticor; he participated in depositions, document production and strategy sessions, and he drafted pleadings, motions briefs, and reports for plaintiff. Indeed, in this very action, Egan drafted plaintiff's complaint for declaratory judgment and the FED. R. CIV. P. 26 initial disclosures. In July 2006, Egan left the employ of Plunkett and, on July 17, 2006, became an associate with defendants' law firm, Wilson Young. The final briefs in this case were filed by the parties on June 1, 2006.

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

National Union now moves to disqualify the Wilson Young firm from representing Alticor. National Union's motion proceeds on the theory of imputed disqualification, under which an attorney's conflict of interest may be imputed to his law firm under certain circumstances. Specifically, National Union relies on two Michigan Rules of Professional Conduct ("MRPC"), MRPC 1.9 and MRPC 1.10.

Previously, the ethics rules for attorneys practicing in our court were largely governed by our common-law precedent. *See, e.g., Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222 (6th Cir. 1988). However, with the wide-spread acceptance of the American Bar Association's Model Rules of Professional Conduct,[1] we now look to the codified Rules of Professional Conduct for guidance. *See, e.g., Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 835 (6th Cir. 1999) (referring to and following the ABA's Model Rules of Professional Conduct and Model Code of Professional Responsibility). We conclude that applying these accepted rules will lead to greater uniformity and predictability with regard to the ethical code of conduct that we demand from the attorneys who practice before us.

Application of the Rules of Professional Conduct are particularly applicable to the present dispute involving Michigan-based law firms and attorneys, who, as members of the State Bar of Michigan, are subject to the Michigan Rules of Professional Conduct.[2]

As an initial matter, we conclude that it is appropriate for this court to entertain National Union's motion and order whatever relief is warranted. In this regard, we agree with the following observations made by the Michigan Court of Appeals:

> Plaintiff's argument appears to be that judges have no ethical oversight regarding their court officers and that the Attorney Grievance Commission is the exclusive authority regulating the ethical obligations of attorneys.

> In this regard, the plaintiff fails to understand the proper role of the court regarding the ethical conduct of its officers. Starting with *In re Mills*, 1 Mich. 392 (1850), Michigan has a long tradition of judicial oversight of the ethical conduct of its court officers. . . . .

> . . . .

> The more recent cases in which our courts have taken affirmative action to enforce our ethical standards and rules regarding counsel are *Schlossberg v. State Bar Griev. Bd.*, . . . 200 N.W.2d 219 (1972), *Attorney General v. Public Service Comm.*, . . . 625 N.W.2d 16 (2000), *In re Norris Estate*, . . . 391 N.W.2d 391 (1986), [etc.] . . . Such a practice is consistent with the Michigan Code of Judicial Conduct Canon 3(B)(3), which provides in part: "A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware."

*Evans & Luptak, PLC v. Lizza*, 650 N.W.2d 364, 368-69 (Mich. App. 2002).

---

[1] The ABA Model Rules of Professional Conduct have been adopted, at least in substantial part, by forty-five states, the District of Columbia, the Virgin Islands, and numerous United States District Courts, including the Western District of Michigan (W.D.MICH. LCIVR 83.1(j)), and the Eastern District of Michigan (E.D.MICH. LR 83.20(j)) (adopting MRPC).

[2] With only minor changes not pertinent to this appeal, the MRPC is identical to the ABA's Model Rules of Professional Conduct.

The Supreme Court has noted our inherent power to discipline attorneys who violate our standards of ethical conduct:

> The Court of Appeals stated that the standard of professional conduct expected of an attorney is defined by the ethical code adopted by the licensing authority of an attorney's home state, 734 F.2d, at 336, n.4, and cited the North Dakota Code of Professional Responsibility as the controlling expression of the conduct expected of petitioner. The state code of professional responsibility does not by its own terms apply to sanctions in the federal courts. Federal courts admit and suspend attorneys as an exercise of their inherent power; the standards imposed are a matter of federal law. *Hertz v. United States*, 18 F.2d 52, 54-55 (CA8 1927).
>
> The Court of Appeals was entitled, however, to charge petitioner with the knowledge of and the duty to conform to the state code of professional responsibility. The uniform first step for admission to any federal court is admission to a state court. The federal court is entitled to rely on the attorney's knowledge of the state code of professional conduct applicable in that state court; the provision that suspension in any other court of record creates a basis for a show cause hearing indicates that Rule 46 anticipates continued compliance with the state code of conduct.

*In re Snyder*, 472 U.S. 634, 645 n.6 (1985).

Accordingly, we exercise our authority to enforce the Rules of Professional Conduct with respect to counsel who appear before this court, and turn to the substance of the MRPC cited by National Union.

MRPC 1.9 is entitled "Conflict of Interest: Former Client" and its first two subsections provide,

> (a) A lawyer [Egan] who has formerly represented a client in a matter [plaintiff National Union] shall not thereafter represent another person [defendant Alticor] in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
>
> (b) Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client. . . .

MRPC 1.9(a) and (b). It is only MRPC 1.9(a) that applies here, because Egan *himself* formerly represented National Union in this very matter. MRPC 1.9(b) does not apply; by its terms, it governs situations where the lawyer's former firm – but not the lawyer himself – represented the now-opposing party.

Both common sense and the Comment to MRPC 1.9 make clear that the interests of Egan's present client (Alticor) and former client (National Union) are adverse in this matter. MRPC 1.9 Comment ¶ 2 provides, in pertinent part, "[w]hen a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited." Plaintiff National Union expressly refuses to consent to Egan representing defendant Alticor, so by the plain terms of MRPC 1.9(a), Egan himself could not represent Alticor (and indeed he does not personally represent Alticor).

The question is whether Egan's new firm, Wilson Young, must suffer imputed disqualification even though Egan is not personally counsel for Alticor in this matter. MRPC 1.10,

entitled "Imputed Disqualification: General Rule," squarely governs the instant situation. It provides, in pertinent part,

> (a) *While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules* 1.7, 1.8(c), *1.9(a)* or (c), or 2.2.

MRPC 1.10(a) (emphasis added). Our inquiry ends here. As discussed above, MRPC 1.9(a) prohibits Egan from representing Alticor or the other defendants-appellants against his former client National Union in this same matter. Therefore, MRPC 1.10(a) states without qualification that no lawyer in Egan's new firm may represent Alticor or the other defendants-appellants against National Union in this matter. Under these circumstances, Wilson Young cannot avoid imputed disqualification by "screening" Egan from this matter, no matter how diligently. *See generally, Manning*, 849 F.2d at 226-27.

Therefore, we GRANT plaintiffs-appellees' motion to disqualify the law firm of Wilson Young PLC from representing defendants-appellants in this matter. Alticor and the other defendants-appellants must secure new counsel if they wish to proceed with this appeal. The court orders that oral argument scheduled for November 1, 2006, is cancelled. New counsel shall be retained within 28 days. New counsel shall file an appearance with the Clerk of this court immediately upon being retained.

It is so ORDERED.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green
_____
Clerk